UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


RONALD G. ROBINSON,                 :
      Petitioner               :      CIVIL NO. 4:CV-04-2401
                                   :
   v.                              :
                                   :
                                   :      (Judge Conaboy)
                                   :
DONALD KELCHNER,                    :
      Respondent               :
_____

## MEMORANDUM AND ORDER
### Background

    Ronald G. Robinson, an inmate presently confined at the State Correctional Institution, Camp Hill, Pennsylvania (SCI-Camp Hill), filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Named as Respondent is SCI-Camp Hill Superintendent Donald Kelchner. Service of the petition was previously ordered.

    Petitioner states that on February 6, 1984, he was convicted of burglary (9 counts); criminal trespass; and receiving stolen property (8 counts) in the Allegheny County Court of Common Pleas. Robinson was subsequently sentenced to a five (5) to twenty (20) year term of incarceration.

    By decision dated August 22, 1988, the Pennsylvania Board of Probation and Parole (Parole Board) granted Robinson parole effective September 1, 1988 (the expiration of his minimum sentence). Between 1988 through 1996 the Petitioner's parole was

1

revoked and he was granted reparole on various occasions.

In December 1996, the Pennsylvania state legislature amended the law governing parole (61 Pa. Stat. § 331). Under the modified criteria, protection of the safety of the public is the paramount condition which must be considered in determining parole eligibility. On April 2, 1998, Robinson's parole was revoked and he was ordered to serve twelve (12) months backtime following his conviction for harassment. Petitioner was denied parole on March 4, 1999. However, Robinson was reparoled on August 31, 1999.

On May 19, 2002, Robinson was arrested in Pittsburgh and charged with criminal trespass and criminal mischief. As a consequence of this arrest, the Parole Board issued a detainer. Petitioner was subsequently convicted of those charges. Thereafter, the Parole Board issued a decision on July 30, 2003 which ordered Robinson to be recommitted as a convicted parole violator and serve nine (9) months backtime. The decision also advised Robinson that in order to obtain a favorable determination at his next parole review he should comply with prescriptive program requirements, undergo drug and alcohol counseling, and avoid institutional misconduct. See Doc. 11, Exhibit F.

Petitioner was denied parole on June 1, 2004. His present action contends that the Parole Board violated the Ex Post Facto Clause by not applying the parole regulations which were in effect at the time of his original sentencing in 1984. His petition adds that he should be excused from the exhaustion of state remedies

2

requirement because to do so would be a "fruitless and wasted effort." Doc. 1, ¶ 13.

Respondent argues that Robinson is not entitled to habeas corpus relief because: (1) he failed to exhaust state court remedies; and (2) the most recent denial of parole did not violate the Ex Post Facto Clause. This matter is ripe for consideration.

## **Discussion**
**I.      Exhaustion**

As a threshold matter, a habeas petitioner must either show that the federal constitutional claims asserted in the federal habeas petition have been "fairly presented" to the state courts, or that there is an absence of available state court corrective process, or that circumstances exist rendering the available state court process ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b).[1]

As previously noted, Robinson argues that exhaustion of his state court remedies would have been futile in light of prior

---

[1] Section 2254(b)(1) of title 28 U.S.C. provides:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that --
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

3

adverse decisions by the Pennsylvania Supreme Court.  See Doc. 1, ¶ 13.

Since the filing of this action on November 2, 2004 and the subsequent submission of the Respondent's answer there have been important federal and state case law developments in the area of when, and if, a Pennsylvania state prisoner must seek state court review of a denial of parole.  Specifically, in January of 2005, the Third Circuit Court of Appeals in Defoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005), held that a state prisoner challenging the denial of parole on constitutional grounds, other than for a violation of the Ex Post Facto Clause, was not required to exhaust state court remedies before pursuing federal habeas review.  Almost exactly one month later, the Pennsylvania Supreme Court decided Cimaszewski v. Bd. of Prob. & Parole, 582 Pa. 27, 868 A.2d 416, 427 (2005), which overruled Finnegan v. Bd. of Prob. & Parole, 576 Pa. 59, 838 A.2d 684 (2003), by recognizing that an ex post facto claim may arise from the application of the 1996 amendments to an applicant convicted prior to the enactment of the amendments who can show that they create "a significant risk of prolonging his incarceration."

These recent case developments support the Respondent's contention that exhaustion should not be excused.  However, as Robinson filed his petition prior to Defoy and Cimaszewski, and given the "considerable jurisprudential confusion" at the time surrounding this issue, it is unreasonable to expect that he could

4

have predicted the Pennsylvania Supreme Court's decision. <u>Defoy</u>, 393 F.3d at 446 (Weis, J., concurring). Nonetheless, the question of exhaustion need not be resolved as the claims presented by Robinson are clearly without merit.[2] <u>See</u> 28 U.S.C. § 2254(b)(2)(a federal court can deny a habeas petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

## II.     **Standard of Review**

28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . .

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to

---

[2] Recently, the Supreme Curt ruled that an ex post facto claim of the nature presented here may be pursued in an action under 42 U.S.C. § 1983. <u>Wilkinson v. Dotson</u>, ___ U.S. ___, 125 S. Ct. 1242 (2005). There is no need to exhaust state court remedies before filing a § 1983 action. Although Justice Scalia, in a concurring opinion in which Justice Thomas joined, suggested that habeas corpus would not be available to pursue such a claim, the majority ruling did not resolve this issue. Whether habeas corpus relief is or is not available with respect to the claims advanced by Robinson is not presently before this Court. In any event, the issue is academic because the underlying claims lack merit whether brought in habeas or under § 1983.

5

ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  See generally, Gattis v. Snyder, 278 F.3d 222, 234 (3d Cir. 2002); Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).  The Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning.  Williams v. Taylor, 529 U.S. 362, 404-405 (2000).  As explained in Bell, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . .

Resolution of factual issues by the state courts is presumed to be correct unless the petitioner presents clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254(e)(1).

In summary, the appropriate inquiry for federal district courts in reviewing the merits of § 2254 petitions is whether the

6

state court decisions applied a rule different from the governing law set forth in United States Supreme Court cases, decided the case before them differently than the Supreme Court has done on a set of materially indistinguishable facts, or unreasonably applied Supreme Court governing principles to the facts of the particular case. State court factual findings may be set aside only if rebutted by clear and convincing evidence. This Court will address Robinson's claims in accordance with the above standards.

### III.     **Ex Post Facto**

Robinson claims entitlement to federal habeas corpus relief on the grounds that the Parole Board violated the Ex Post Facto Clause of the United States Constitution by applying the 1996 amendments to Pennsylvania's parole regulations in his case. He contends that since his original state criminal conviction occurred in 1984, the parole regulations which were in effect at that time should be applied in his case.

As noted earlier, in 1996 the Pennsylvania legislature amended its parole law by setting forth the public policy statement of the Commonwealth concerning parole. Specifically, the 1996 legislation decreed that "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[3] The

---

[3] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the

7

former § 331.1 made no mention of pubic safety, and in fact declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.[4]

A new law or policy violates the Ex Post Facto Clause of the United States Constitution when it is applied to events which occurred prior to its enactment and disadvantages the offender affected by it.  Weaver v. Graham, 450 U.S. 24, 29 (1981).  The Ex

---

> opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public.  In addition to this goal, the board shall address input by crime victims and assist in the *fair administration of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

[4]  Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

8

Post Facto Clause applies to a statutory or policy change that "alters the definition of criminal conduct or increases the penalty by which a crime is punishable."  Mickens-Thomas v. Vaughn, 321 F.3d 374, 383 (3d Cir. 2003)("Mickens-Thomas I"), quoting, California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995). "One function of the *Ex Post Facto* Clause is to bar enactments, which by retroactive operation increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000).  A retroactive application of a change in parole laws can constitute an ex post facto violation. See id. at 250.

     As previously noted, Petitioner was initially granted parole in August, 1988.  See Doc. 11, Exhibit A.  Between 1988 and 1998, Robinson had multiple parole revocations and grants of reparole. Clearly, any parole related proceedings which transpired prior to the December, 1996 enactments cannot serve as a proper basis for his present ex post facto claim.  On April 2, 1998, Petitioner's parole was revoked.  See id. at Exhibit B.  However, after being denied parole in March, 1999, Robinson was granted reparole on August 31, 1999.  See id. at Exhibits C & D.  In light of his being reparoled, any ex post facto claim stemming from those proceedings is subject to dismissal on the basis of mootness.

     Robinson was arrested on May 19, 2002 and charged with criminal trespass and criminal mischief.  His parole was revoked on July 30, 2003 as a result of his conviction on those charges.  See id. at Exhibit F.  On June 1, 2004, Robinson was denied parole.

See id. at Exhibit G.

In Mickens-Thomas I, the Court of Appeals for the Third Circuit addressed the ex post facto ramifications of the 1996 parole amendments. The Third Circuit noted that the essential inquiry was "whether, in practice, the new language has altered the fundament for reviewing parole applications." Id. at 384 (emphasis added). It concluded that the 1996 amendments as applied to Mickens-Thomas constituted an Ex Post Facto Clause violation, noting that there was "significant evidence that [the Board] acted upon policies that were established after [the petitioner]'s crime and conviction." Id. at 393. The Third Circuit explained:

> [A] parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement, and instead utterly ignores all factors counseling in favor of release, falls outside the realm of the legitimate exercise of discretion under the pre-1996 policies. Inference instructs us that the Board inappropriately relied on policies implemented in 1996, rather than the parole policies in place at the time of Thomas's crime and conviction.

Id. at 387.

The Court noted that "[t]he Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Id. However, the Third Circuit recognized that a recent decision of the Pennsylvania Supreme Court, Winklespecht v. Pa. Bd.

10

of Prob. & Parole, 571 Pa. 685, 813 A.2d 688 (2002), concluded that the amended § 331.1 did not require the Board to place the greatest weight on considerations of public safety. Id. Unfortunately, the Winklespecht decision was announced after the denial of parole to Mickens-Thomas.

With respect to Mickens-Thomas and other habeas applicants who were denied parole after adoption of the 1996 changes and before Winklespecht clarified the fact that the amendment did not change the administration of the policies, the appropriate remedy for an ex post facto violation has been to remand the matter to the Parole Board for reconsideration, applying the pre-1996 law.[5] See Hart v. Pa. Bd. of Prob. & Parole, 82 fed. Appx. 276 (3d Cir. Nov. 23, 2003); see also McLaurin v. Larkins, 76 Fed. Appx. 415 (3d Cir. Sept. 18, 2003); Hollawell v. Gillis, 65 Fed. Appx. 809, 2003 WL 1919371, at *8 (3d Cir. April 23, 2003).

In cases where parole was denied after Winklespecht, federal habeas corpus relief has been denied where it was evident that the denial of parole was based upon factors that would have resulted in the denial of parole under pre-1996 policies and practices. See Grob v. Pa. Bd. of Prob. & Parole, Civil No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); Sphar v. Pa. Bd. of

---

[5] Following remand in Mickens-Thomas I, the Parole Board again denied parole. The Third Circuit found that the Parole Board had exhibited "willful noncompliance, bad faith, and . . . vindictiveness" sufficient to direct the release of the petitioner. Mickens-Thomas v. Vaughn, 355 F.3d 294, 310 (3d Cir. 2004) ("Mickens-Thomas II").

11

Probation & Parole, Civil No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J.).

Recently, the Third Circuit stated that in order to obtain relief on an ex post facto claim, a Pennsylvania state prisoner must show "*both* a retroactive change in law or policy *and* that this change caused individual disadvantage" by increasing the risk of punishment. Richardson v. Pennsylvania Parole Board, 2005 WL 2155505 *1 (3d Cir. Sept. 8, 2005)(emphasis in original). In Richardson, the Court added that it was not sufficient for a prisoner to merely "show that the Board relied on a new law or policy." Id. at * 9. Rather, the inmate must show that he was personally disadvantaged.

The June 1, 2004 decision which denied parole to Robinson clearly came after the Pennsylvania Supreme Court had decided Winklespecht. Based on a review of the record, it was not the Parole Board's application of harsher laws or guidelines that caused the denial of parole. The Parole Board's decision specifically enumerated legitimate reasons for denying parole that would have also warranted the denial of parole prior to the 1996 amendments. Specifically, the Parole Board's written decision clearly stated that Robinson was being denied parole based on his history of prior failures when granted parole; his poor institutional behavior including reported misconducts, and his refusal to accept responsibility for new crimes committed while on parole. See Doc. 11, Exhibit G.

12

Unlike Mickens-Thomas I, the Parole Board had the benefit of Winklespecht prior to conducting Robinson's June, 2004 parole review. The Parole Board's decision listed a series of significant reasons for denying Robinson parole which stress, not public safety issues, but rather the Petitioner's own conduct and the Parole Board's perception of his suitability for release.

The June 1, 2004 decision clearly voiced dissatisfaction with Robinson's institutional behavior, recidivism, and lack of responsibility for his most recent crimes. Each of those matters are encompassed in § 331.19 as factors to be considered in parole decisions.[6]

There is no indication that either public safety or the fair administration of justice were controlling factors in the 2004 decision to deny Robinson parole. It is apparent to this Court that Petitioner would have been denied parole regardless of the subsequent enactment of the 1996 amendments to the Parole Act. As required under Richardson, Robinson has not shown that he was

---

[6] § 331.19 provides in relevant part:

> It shall be the duty of the board . . . to consider the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner. . . . The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history, . . . his complete criminal record, as far as the same may be known, to be reported and investigated.

13

personally disadvantaged by the use of the 1996 amendments.  Since a violation of the Ex Post Facto Clause has not been established, Petitioner's request for federal habeas corpus relief will be denied.  An appropriate Order will enter.

AND NOW, THEREFORE, THIS 24 th DAY OF OCTOBER, 2005, IT IS HEREBY ORDERED THAT:

1. The petition for writ of habeas corpus is denied.
2. The Clerk of Court is directed to close the case.
3. Based on the Court's determination herein, there is no basis for the issuance of a certificate of appealability.

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge